IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JON R. HEGWER,

          Plaintiff,

vs.                             Case No. 15-9285-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

          Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

## I.  General legal standards

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that
they are not only unable to perform their previous work but
cannot, considering their age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy.  42 U.S.C. § 423(d).

    The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one,
the agency will find non-disability unless the claimant can show
that he or she is not working at a "substantial gainful
activity."  At step two, the agency will find non-disability
unless the claimant shows that he or she has a "severe
impairment," which is defined as any "impairment or combination
of impairments which significantly limits [the claimant's]
physical or mental ability to do basic work activities."  At
step three, the agency determines whether the impairment which
enabled the claimant to survive step two is on the list of
impairments presumed severe enough to render one disabled.  If
the claimant's impairment does not meet or equal a listed
impairment, the inquiry proceeds to step four, at which the
agency assesses whether the claimant can do his or her previous
work; unless the claimant shows that he or she cannot perform
their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

This case involves termination of benefits after plaintiff was found disabled. An eight-step sequential evaluation process is used in termination-of-benefit reviews in a case involving disability insurance benefits. If the Commissioner meets his burden of establishing that the claimant's medical condition has

improved and that the improvement is related to the claimant's
ability to work, the Commissioner must then demonstrate that the
claimant is currently able to engage in substantial gainful
activity.  Hayden v. Barnhart, 374 F.3d 986, 988 (10th Cir.
2004).  The burden of proof is on the Commissioner in a
termination-of-benefits review.  Hayden, 374 F.3d at 991; Glenn
v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994).

     The eight-step sequential evaluation process is as follows:
(1) Is the claimant engaged in substantial gainful activity? (If
yes, and any applicable trial work period has been completed,
the agency will find that disability has ended).
(2) Does the claimant have an impairment or combination of
impairments which meets or equals the severity of a listed
impairment? (If yes, the claimant is still disabled.)
(3) If not, has there been medical improvement?  If there has
been medical improvement, as shown by a decrease in medical
severity, see step 4.  If there has been no decrease in medical
severity, there has been no medical improvement (see step 5).
(4) If there has been medical improvement, the agency must
determine whether it is related to the claimant's ability to
work (whether there has been an increase in the residual
functional capacity (RFC) based on the impairment that was
present at the time of the most favorable medical
determination).  If medical improvement is not related to the

claimant's ability to work, see step 5.  If medical improvement
is related to claimant's ability to work, see step 6.

(5) If no medical improvement was found at step 3, or that the
medical improvement was found at step 4 not to be related to
claimant's ability to work, the agency considers a number of
exceptions; if none of them apply, claimant's disability will be
found to continue.

(6) The agency will next determine whether all of the claimant's
current impairments in combination are severe.  If claimant has
no severe impairments, claimant will no longer be considered
disabled.

(7) If claimant's impairments are severe, the agency will assess
the claimant's current ability to do substantial gainful
activity.  The agency will assess the claimant's RFC and
consider whether the claimant can perform past work.  If
claimant can perform past work, claimant will no longer be
considered disabled.

(8) If claimant cannot perform past work, the agency will
consider, given claimant's RFC, whether claimant can perform
other work in the national economy.

20 C.F.R. § 404.1594(f).

     To apply the medical improvement test, the ALJ must first
compare the medical severity of the current impairment(s) to the
severity of the impairment(s) which was present at the time of

the most favorable medical decision finding the claimant
disabled.  Then, in order to determine that medical improvement
is related to ability to work, the ALJ must reassess a
claimant's RFC based on the current severity of the
impairment(s) which was present at the claimant's last favorable
medical decision.  The ALJ must then compare the new RFC with
the RFC before the putative medical improvements.  The ALJ may
find medical improvement related to an ability to work only if
an increase in the current RFC is based on objective medical
evidence.  Shepherd v. Apfel, 184 F.3d 1196, 1201 (10th Cir.
1999).

## II.  History of case

     In May 2001 plaintiff was found disabled as of June 28,
2000 because of fractures of his arms requiring ongoing medical
management.  A continuing disability review dated May 19, 2008
found that plaintiff's condition had medically improved
beginning May 15, 2008, and his period of disability was
terminated effective July 31, 2008 (R. at 491).  After
exhausting administrative remedies, plaintiff sought judicial
review, and on October 24, 2013 Judge Lungstrum reversed and
remanded the decision of the Commissioner because of her failure
to evaluate the medical opinion of Dr. Majure-Lees (R. at 490-
500).

On June 2, 2015, administrative law judge (ALJ) George M.
Bock issued his decision (R. at 469-476).  The most recent
favorable medical decision finding that plaintiff was disabled
is the decision dated August 30, 2003.  This is known as the
comparison point decision (CPD).  At the time of the CPD,
plaintiff had medically determinable impairments which met a
listed impairment.  Through May 1, 2008, the date plaintiff's
disability ended, plaintiff did not engage in substantial
gainful activity.  As of May 1, 2008, plaintiff had medically
determinable impairments (R. at 471).  However, those
impairments did not meet or equal a listed impairment (R. at
472).

The ALJ then found that medical improvement occurred as of
May 1, 2008.  The ALJ found that the medical improvement is
related to the ability to work because, as of May 1, 2008,
plaintiff's CPD impairment no longer met or medically equaled
the same listing that was met at the time of the CPD.  As of May
1, 2008, plaintiff continued to have a severe impairment or
combination of impairments.  The ALJ then determined plaintiff's
RFC as of May 1, 2008, which limited plaintiff to light work
with some additional limitations (R. at 472).  The ALJ
determined that, as of May 1, 2008, plaintiff was unable to
perform past relevant work, but was able to perform a
significant number of other jobs in the national economy (R. at

475-476).  Therefore, the ALJ concluded that plaintiff's

disability ended as of May 1, 2008 (R. at 476).

**III.  Did the ALJ err by failing to consider the opinions of Dr.**

**Brooks, plaintiff's treating physician?**

An ALJ must evaluate every medical opinion in the record.

Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  This

rule was described as a "well-known and overarching

requirement."  Martinez v. Astrue, 422 Fed. Appx. 719, 724 (10th

Cir. Apr. 26, 2011).  Even on issues reserved to the

Commissioner, including plaintiff's RFC and the ultimate issue

of disability, opinions from any medical source must be

carefully considered and must never be ignored.  Social Security

Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  The ALJ "will"

evaluate every medical opinion that they receive, and will

consider a number of factors in deciding the weight to give to

any medical opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).  It

is clear legal error to ignore a medical opinion.  Victory v.

Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).

According to SSR 96-8p:

> The RFC assessment must always consider and
> address medical source opinions. If the RFC
> assessment conflicts with an opinion from a
> medical source, the adjudicator must explain
> why the opinion was not adopted.

1996 WL 374184 at *7.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion.  Knight v. Astrue, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010).

At the hearing on March 19, 2015, plaintiff's counsel notified the ALJ that they were adding to the record treatment records from Dr. Brooks (R. at 920).  The transcript index shows that those medical records were added subsequent to the hearing (R. at 4J).

On October 6, 2014, Dr. Brooks noted that plaintiff's left knee had some obvious degenerative changes, and that he has limited flexion and extension.  He found diminished power in the left lower extremity.  He further noted a flat affect with limited ability to think abstractly consistent with TBI (traumatic brain injury).  Pain was also noted in the right shoulder (R. at 914).  On November 3, 2014, Dr. Brooks assessed generalized anxiety with panic and chronic pain (R. at 896).

On December 1, 2014, Dr. Brooks mentioned in relation to plaintiff's recent work activity that plaintiff had trouble

being on his feet for more than 4 hours and had a very difficult
time with memory.  Dr. Brooks stated: "Cannot imagine being able
to work due to the injuries and pain and also due to the memory
problems" (R. at 900).  Dr. Brooks also noted memory problems
related to TBI.  Dr. Brooks recorded plaintiff's mother as
indicating that plaintiff's coping skills are minimal, that he
is angry or depressed, that he cannot spell and write very well
(a major change from the past), that he has a lot of difficulty
completing tasks and multitasking, that he has no drive or
initiative, and he has no focus.  Dr. Brooks concluded his
report by stating: "I do think he is totally and chronically
disabled and would support disability in his case" (R. at 900).

    Dr. Brooks saw plaintiff on December 30, 2014.  He noted
that plaintiff was having a lot of right shoulder pain, and pain
in the left elbow and left knee.  He stated that plaintiff's
memory was worsening and that he suffered from chronic pain.  He
stated that: "I do agree that the disability route is
appropriate for him" (R. at 912).

    Dr. Brooks saw plaintiff on January 27, 2015.  He noted
that plaintiff had ongoing pain issues and was having trouble
with memory.  He assessed chronic pain and traumatic brain
injury (R. at 908).

    The final report from Dr. Brooks is on March 19, 2015.  He
states that plaintiff continue to have a lot of pain in his left

knee and that he has not been able to stand for long periods of time.  Dr. Brooks notes that plaintiff's memory seems to be worsening.  He found that plaintiff's left knee has diffuse tenderness, limited flexion and full extension, and some joint space hypertrophy as well (R. at 916).

In these medical reports, Dr. Brooks stated that, in his opinion, plaintiff is totally and chronically disabled.  In addition to the problems with plaintiff's left arm (the ALJ found that plaintiff had no use of his left arm or left hand, R. at 472), Dr. Brooks also noted that plaintiff had degenerative changes in his left knee with limited flexion and extension; Dr. Brooks further assessed plaintiff with TBI (traumatic brain injury) with memory problems; he also noted on two occasions that plaintiff had a lot of right shoulder pain.

However, the ALJ failed to mention these reports, including the opinion of Dr. Brooks that plaintiff was disabled, even though he was notified at the hearing by plaintiff's counsel that he would be adding these medical records to the record in this case, and the transcript index indicates that they were in fact added after the hearing.  The failure to mention these reports and the opinion of Dr. Brooks is especially inexcusable in light of the fact that this case was previously remanded by Judge Lungstrum because of the same ALJ's failure in his 2010 decision to discuss the medical opinion of Dr. Majure-Lees (R.

at 15-26, 490-500).  As Judge Lungstrum stated in his opinion,

citing to SSR 96-8p, the RFC assessment must always consider and

address medical opinions.  If the RFC conflicts with an opinion

from a medical source, the ALJ must explain why the opinion was

not adopted (R. at 497).  The regulations, rulings and case law

are clear and unambiguous that every medical opinion must be

addressed by the ALJ.

In the case before the court, Dr. Brooks opined that

plaintiff was disabled, and further discussed plaintiff's

impairments and limitations regarding his left arm, left knee,

right shoulder and TBI with related memory issues.  As this

court set forth above, even on issues reserved to the

Commissioner, including whether an individual is disabled,

opinions from any medical source on an issue reserved to the

Commissioner must be carefully considered and must never be

ignored.  SSR 96-5p, 1996 WL 374183 at *2-3.

In the case of Ramirez v. Astrue, 255 Fed. Appx. 327 (10th

Cir. Nov. 20, 2007), Dr. Davis examined the claimant and found a

number of impairments, which he noted in his report.  Dr. Davis

concluded, given his multiple health problems, that it was

unlikely that he would be able to engage in any significant type

of work activity until he is recovered.  255 Fed. Appx. at 328.

However, the ALJ made no reference to the opinion of Dr. Davis

that claimant could not work.  The court held that because the

opinion of Dr. Davis that plaintiff could not work conflicted with the ALJ's determination that Mr. Ramirez could perform light work, the ALJ was directed on remand to make specific findings explaining why he did not adopt the opinions of Dr. Davis in accordance with SSR 96-8p.  The court stated that although the issue of whether Mr. Ramirez was able to work is an issue reserved to the Commissioner, the court, citing to SSR 96-5p, held that the controlling rules nonetheless provide that ALJs must always consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.  255 Fed. Appx. at 332-333.

In the case of Marsh v. Colvin, 792 F.3d 1170 (9th Cir. 2015), Dr. Betat stated in his medical note on the claimant that she has chronic bursitis to the point that she is pretty much nonfunctional, and cannot concentrate enough to do office work. He indicated that the patient "appears to be disabled" and that it seems to be legitimate, although it is sometimes difficult to tell for sure.  792 F.3d at 1171.  The ALJ failed to even mention Dr. Betat or his medical notes, including his opinion that she appears to be disabled.  792 F.3d at 1172.  The court held that an ALJ cannot in its decision totally ignore a treating doctor and his or her notes which contain a medical opinion.  792 F.3d at 1172-1173.  The court further concluded that the error was not harmless.  792 F.3d at 1173.

Finally, in the case of <u>Watkins v. Barnhart</u>, 350 F.3d 1297 (10th Cir. 2003), Dr. Rowland stated that because of plaintiff's multiple health problems, including chronic back pain, knee pain, and sleep apnea, Dr. Rowland concluded that plaintiff was unable to work an eight-hour day doing anything, sitting or standing.  350 F.3d at 1299.  This opinion clearly addresses whether the claimant was disabled, an issue reserved to the Commissioner.  The ALJ, contrary to the opinion of Dr. Rowland, found that plaintiff could perform light work.  350 F.3d at 1299-1300.  The court held as follows:

> Here, the ALJ failed to articulate the weight, if any, he gave Dr. Rowland's opinion, and he failed also to explain the reasons for assigning that weight or for rejecting the opinion altogether.  We cannot simply presume the ALJ applied the correct legal standards in considering Dr. Rowland's opinion.  We must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion.

350 F.3d at 1301.

Defendant argues that the opinions of Dr. Brooks are not entitled to any special significance, and that the ALJ did discuss the opinions of Ms. Ensminger, an assistant to Dr. Brooks.  Defendant argues that the ALJ's reasoning for discounting the opinions of Ms. Ensminger would apply with equal force to the statements and opinions of Dr. Brooks, and that the

error is therefore harmless (Doc. 21 at 18).  This also raises
the issue of whether the ALJ erred in his consideration of the
opinions of Ms. Ensminger.  For the reasons set forth below, the
court finds that the ALJ erred in his analysis of the opinions
of Ms. Ensminger.  The court further concludes that defendant's
argument that the ALJ's failure to consider the opinions of Dr.
Brooks is harmless error is without merit.

Ms. Ensminger, a physician assistant (who worked for Dr.
Brooks), opined on July 29, 2010 that due to the severe nature
of plaintiff's injuries he continues to suffer from ongoing pain
and debilitating orthopedic problems.  She opined that plaintiff
will have some degree of disability for the rest of his life and
at present is completely disabled (R. at 384).  The ALJ
discounted her opinions because they are inconsistent with
plaintiff's lack of treatment, and because the source is not an
acceptable medical source (R. at 474).

First, the ALJ discounted her opinions because they were
inconsistent with her lack of treatment.  However, at the
hearing in 2010, plaintiff testified that he had lost his health
insurance, and thus had not been able to see his health care
providers (R. at 455).  SSR 96-7p states the following:

> On the other hand, the individual's
> statements may be less credible if the level
> or frequency of treatment is inconsistent
> with the level of complaints, or if the
> medical reports or records show that the

> individual is not following the treatment as
> prescribed and there are no good reasons for
> this failure. However, the adjudicator must
> not draw any inferences about an
> individual's symptoms and their functional
> effects from a failure to seek or pursue
> regular medical treatment without first
> considering any explanations that the
> individual may provide, or other information
> in the case record, that may explain
> infrequent or irregular medical visits or
> failure to seek medical treatment...The
> explanations provided by the individual may
> provide insight into the individual's
> credibility.

SSR 96-7p, 1996 WL 374186 at *7 (emphasis added); cited with
approval in Madron v. Astrue, 311 Fed. Appx. 170, 178 (10th Cir.
Feb. 11, 2009).  The fact than an individual may be unable to
afford treatment and may not have access to free or low-cost
medical service is a legitimate excuse.  Madron, 311 Fed. Appx.
at 178; SSR 96-7p, 1995 WL 374186 at *8.  Thus, the ALJ erred by
discounting the opinion of the physician assistant without
considering plaintiff's testimony that he could not afford
medical treatment due to the loss of insurance.

Second, the ALJ discounted the opinion of the physician
assistant because she is not an acceptable medical source.  A
physician assistant is not an "acceptable medical source" under
the regulations.  20 C.F.R. § 404.1513(a).  However, evidence
from "other medical sources," including a physician assistant,
may be based on special knowledge of the individual and may

17

provide insight into the severity of an impairment and how it affects the claimant's ability to function.  Opinions from other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.  The fact that an opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because "acceptable medical sources" are the most qualified health care professionals.  However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source.  SSR 06-03p, 2006 WL 2329939 at **2,3,5.  Thus, the ALJ should have considered the opinion of the physician assistant in accordance with SSR 06-03p.

Third, unlike Ms. Ensminger, Dr. Brooks is an acceptable medical source, whose opinions are generally entitled to greater weight.  Thus, discounting the opinion of a physician assistant because her opinion is not that of an acceptable medical source has no bearing on weighing the opinion of an acceptable medical source.

Fourth, the fact that an acceptable medical source also found plaintiff to be disabled, may, to a reasonable factfinder, provide corroboration for the earlier opinion of Ms. Ensminger, and may therefore result in the ALJ being less dismissive of Ms. Ensminger's assessment.  See Trujillo v. Colvin, 626 Fed. Appx. 749, 751-752 (10th Cir. Sept. 24, 2015).  The ALJ must not consider the opinions of the medical and other examining sources in isolation, but their opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of all of the medical and other examining sources. The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of all of the medical and other sources, and the need for the ALJ to take this into consideration.  See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).

Fifth, the opinions of Dr. Brooks were made concurrent with treatment provided from October 2014 through March 2015, over 4 years after the opinions offered by Ms. Ensminger.  Those treatment records include assessments of plaintiff's left knee, right shoulder and TBI impairments.  The ALJ must examine the opinions of Dr. Brooks in light of all the medical records,

19

including the treatment records from the time period in which those opinions were offered.

Sixth, as the regulations, rulings and case law cited above make clear, the ALJ must address a medical source opinion that a plaintiff is disabled or unable to work. As set forth above, even on issues reserved to the Commissioner, including the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.

Finally, defendant argues that the ALJ is not required to discuss every piece of evidence in the record, including the opinions of Dr. Brooks (Doc. 21 at 18). This is not a correct statement of the law. Again, as set forth above, although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion. Knight v. Astrue, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010). For all of these reasons, the court concludes that the failure to consider the opinions of Dr. Brooks is not harmless error.

The ALJ has yet again failed to address a medical source opinion.  Therefore, this case shall be remanded in order for the Commissioner to consider the reports of Dr. Brooks regarding plaintiff's left knee impairment, right shoulder pain and TBI (and related memory problems), and his opinion that plaintiff is disabled.  The ALJ must also reexamine the weight to be accorded to the opinions of Ms. Ensminger, a physician assistant, for the reasons set forth above.

Plaintiff has also taken issue with the ALJ's RFC findings and his credibility analysis.  The court will not address these issues because they may be affected by the ALJ's resolution of the case on remand after the ALJ gives further consideration to the medical evidence and medical opinions, as set forth above. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

**IV.  Should this case be reversed for an award of reinstatement of benefits or for further hearing?**

When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits.  When the defendant has failed to satisfy their burden of proof at step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of benefits.  Ragland v.

Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993).  The defendant is
not entitled to adjudicate a case ad infinitum until it
correctly applies the proper legal standard and gathers evidence
to support its conclusion.  Sisco v. United States Dept. of
Health & Human Services, 10 F.3d 739, 746 (10th Cir. 1993).  A
key factor in remanding for further proceedings is whether it
would serve a useful purpose or would merely delay the receipt
of benefits.  Harris v. Secretary of Health & Human Services,
821 F.2d 541, 545 (10th Cir. 1987).  Thus, relevant factors to
consider are the length of time the matter has been pending, and
whether or not, given the available evidence, remand for
additional fact-finding would serve any useful purpose, or would
merely delay the receipt of benefits.  Salazar v. Barnhart, 468
F.3d 615, 626 (10th Cir. 2006).  The decision to direct an award
of benefits should be made only when the administrative record
has been fully developed and when substantial and uncontradicted
evidence in the record as a whole indicates that the claimant is
disabled and entitled to benefits.  Gilliland v. Heckler, 786
F.2d 178, 184, 185 (3rd Cir. 1986).

     Although the court is gravely concerned with the delay
engendered by the ALJ twice failing to consider all of the
medical opinion evidence, the court does not find substantial
and uncontradicted evidence that plaintiff is disabled.
Therefore, this case shall be remanded for further hearing.

However, defendant is again reminded that it is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 10th day of February 2017, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge